

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00051-CR

———————————————

TANISHA LARACHEAL ROEBUCK, Appellant

V.

THE STATE OF TEXAS

———————————————

On Appeal from County Criminal Court No. 10
Tarrant County, Texas
Trial Court No. 1553148

———————————————

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

In one point, Tanisha Laracheal Roebuck challenges the sufficiency of the evidence to support her conviction for criminal trespass at a hospital. Roebuck's challenge hinges on testimony describing her as a "patient" at the hospital, arguing that because she was then under treatment, she must have had the hospital's consent to be present. But the jury could have disbelieved this evidence and instead placed its confidence in testimony that Roebuck was not undergoing treatment of any kind; multiple witnesses testified that Roebuck was at the hospital solely to contest a prior trespass warning. Because the evidence is sufficient to support the element of lack of consent, we affirm.

## I. BACKGROUND

Roebuck was charged with criminal trespass in connection with the events of July 11, 2018, when she was arrested and removed from John Peter Smith Hospital (JPS) in Fort Worth.[1] At a jury trial, the evidence established as follows:[2]

---

[1]Roebuck was also charged with resisting arrest. However, the jury found Roebuck not guilty of that offense, and it is not at issue in this appeal.

[2]Consistent with our standard of review, we recite the background facts in the light most favorable to the jury's verdict, resolving conflicting inferences in favor of the verdict. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015).

## A. Officer McQuade's Testimony

Officer Andrew McQuade testified that on July 1, 2018, he observed Roebuck, a homeless woman, sitting in the lobby of JPS with her dog, watching a video on her phone. Officer McQuade had seen her around JPS several times in the preceding days, but he did not believe that she was receiving treatment. After interviewing her, Officer McQuade found that she did not have business at JPS. Roebuck said that someone on hospital staff—she did not say who—had "given her permission to hang out at the hospital." In Officer McQuade's view, no one on staff was authorized to do such a thing. Officer McQuade gave Roebuck a criminal trespass warning and explained to her that she could not be on hospital grounds for any reason other than medical treatment. Roebuck stated that she understood. He then escorted her off the property without incident.

## B. Norma Rodriguez's Testimony

Norma Rodriguez, who worked in patient relations at JPS, testified that Roebuck came to the hospital again on July 11, 2018. Roebuck inquired whether the trespass warning could be lifted. Rodriguez explained that it would not be lifted and that under the trespass warning, she could not be at JPS unless she was there for treatment. However, Roebuck gave no indication that she was there for treatment. Instead, Roebuck asked if she could get ice or use the restroom at the hospital. Rodriguez made clear that this would be inconsistent with the warning. Because Roebuck did not seem

to understand, Rodriguez asked for and received Roebuck's permission to have an officer come and explain the warning to her.

## C. Officer J. Taylor's Testimony

Officer J. Taylor testified that when he arrived, he attempted to explain the boundaries of the trespass warning to Roebuck and that it would not be lifted. Roebuck became combative, claiming that a social worker had given her permission to be at JPS. However, Officer Taylor contacted the social worker, who explained that she had not given Roebuck permission to be there. After Officer Taylor exhausted all avenues of explaining the situation to Roebuck, he asked her to leave the property. Roebuck said she would not leave and began walking farther into the hospital. Officer Taylor stepped in front of her. Officer Taylor testified that he gave her another opportunity to leave, but Roebuck refused, so he arrested her for criminal trespass.

## D. Erica Smith's Testimony

Erica Smith, a social worker at JPS, testified that she regularly worked with the local homeless population, and she estimated that she had seen Roebuck several times between February and July 2018. According to Smith, when she learned that Roebuck had been issued a trespass warning, she advised Roebuck that she could visit the hospital's patient relations department to address the issue. However, Smith agreed that she did not have the authority to override the trespass warning.

4

## E.     Roebuck's Testimony

Roebuck testified that after she became ill, she began seeking medical attention, first at various hospitals in Dallas and then at JPS.  According to Roebuck, her first visit to JPS was on February 17, 2018, when she received treatment for severe, chronic pain stemming from a past car accident.  Roebuck testified that between February and July of 2018, she checked herself into JPS many times for various medical conditions.

In Roebuck's version of events, she was having digestive problems on July 1, 2018, so she was staying near the bathroom in JPS's lobby when Officer McQuade approached her and gave her a trespass warning.  By Roebuck's account, she was confused because Smith, JPS's own social worker, had given her permission to be there.  Nonetheless, Roebuck testified that she complied with the warning.  She explained that the next day, she emailed Smith about how to address the warning, and Smith instructed her to visit the patient relations department.

Roebuck claimed that when she visited the patient relations department on July 11, 2018, Rodriguez reviewed her records and agreed that Roebuck had a number of health conditions under treatment, so Rodriguez "didn't see what the problem was." According to Roebuck, Rodriguez said, "[L]et me call an officer down here and see if we can get this rectified."

Roebuck testified that when Officer Taylor arrived, he was immediately belligerent and disbelieved that Smith had given Roebuck permission to enter the hospital.  Roebuck stated that after he finished his call with Smith, Officer Taylor

5

instructed Roebuck to leave the hospital. According to Roebuck, she agreed to do so but told Officer Taylor that she was going to get some food at a restaurant within the hospital before leaving. Roebuck testified that as she walked down the hall, Officer Taylor roughed her up and arrested her. However, Roebuck agreed that when she was instructed to the leave the hospital, she did not go toward the exit.

### F.    Jury's Verdict

When the State rested, Roebuck moved for directed verdict. The trial court denied the motion.

After the close of the evidence, the jury found Roebuck guilty of criminal trespass. The trial court assessed punishment at sixty days in jail with credit for time served. Roebuck appeals.

## II.    DISCUSSION

In her sole point, Roebuck challenges the denial of her motion for directed verdict. Citing evidence that she was a "patient" at the hospital, she argues that the evidence is insufficient to demonstrate that she lacked the hospital's effective consent to be present on the day of her arrest.

We treat a point of error complaining about a trial court's denial of directed verdict as a challenge to the sufficiency of the evidence. *Smith v. State*, 499 S.W.3d 1, 6 n.16 (Tex. Crim. App. 2016). In our sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49. "Under this standard, evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt." *Queeman*, 520 S.W.3d at 622 (quoting *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013)).

A person commits the offense of criminal trespass if the person enters or remains on or in property of another without effective consent and the person (1) had notice that the entry was forbidden or (2) received notice to depart but failed to do so. Tex. Penal Code Ann. § 30.05(a).

Roebuck argues that the evidence is insufficient to show that she lacked the hospital's effective consent. As Roebuck points out, it is undisputed that the trespass warning she received was conditional: it did not apply if she was receiving medical attention. Roebuck underscores testimony that, in her view, suggests she was receiving medical attention on the day of her arrest. For instance, Officer McQuade agreed that Roebuck "was a patient from time to time" at the hospital. Similarly, Roebuck testified that she had been intermittently receiving treatment at JPS since February. Finally, and most importantly, Rodriguez described her as a "current patient" at certain points during her testimony:

> Q. Let me ask you, when you say patient was—was she a current patient, was she a former patient, was she a future patient?
>
> A. I've never come to counter—encounter this patient before. Just looking at her record I could see that she was a current patient.

As we understand her argument, Roebuck contends that this testimony conclusively establishes a reasonable doubt as to whether she had the hospital's consent to be on the property. *See Queeman*, 520 S.W.3d at 622.

However, the jury could have disbelieved this testimony—or rather, viewed it in the context of subsequent testimony clarifying that the use of the term "patient" did

8

not mean that Roebuck was receiving treatment on the day of her arrest. For example, Rodriguez later made clear that she had been using the phrase "current patient" to refer to anyone with a recent medical file at the hospital, not just those who were presently being treated. To the contrary, Rodriguez believed that Roebuck did not have an appointment on the day she was arrested; Rodriguez attested that Roebuck was not a "patient" in that sense. Similarly, Officer Taylor testified that when he spoke with Roebuck, she "stated she was not a patient" in that sense.

Rather, according to multiple witnesses, Roebuck was not at the hospital to receive medical treatment but to contest her trespass warning. By Rodriguez's account, Roebuck never indicated that she was actually at the hospital for treatment on July 11, and it did not appear that Roebuck was having any kind of medical emergency. According to Rodriguez, it appeared that Roebuck was there for the purpose of contesting the trespass warning. Likewise, Officer Taylor testified that he did not believe Roebuck was there for medical reasons; in his view, Roebuck's sole aim was to contest the criminal trespass warning. And even according to Roebuck's own version of events, she was present at the hospital on July 11 to contest the trespass warning through the patient relations department, and she never mentioned any further intention to seek medical aid.

From this testimony, the jury could have rationally inferred that protest, not treatment, was the purpose of Roebuck's visit, and treatment was the only path by which Roebuck had JPS's consent to pass onto hospital property. *See Murray*, 457

9

S.W.3d at 448–49. Viewing the evidence in the light most favorable to the verdict, then, we conclude the cumulative force of the record evidence would have enabled any rational jury to find a lack of effective consent. *See Queeman*, 520 S.W.3d at 622; *Ray v. State*, No. 03-14-00538-CR, 2016 WL 1317941, at *4 (Tex. App.—Austin Mar. 30, 2016, no pet.) (mem. op., not designated for publication) (concluding, in a prosecution for trespass at a hospital, that the evidence was sufficient to show lack of consent because the appellant professed that his reason for being at the hospital was to protest a trespass warning similar to the one issued here, and because there was no evidence that the appellant was seeking medical treatment). Aside from consent, Roebuck has not challenged the sufficiency of the evidence to support any other element of her conviction. We therefore overrule her sole point.

## III. CONCLUSION

We affirm the judgment of the trial court.

/s/ Wade Birdwell
Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 10, 2019

10